[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-11115

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHRISTOPHER TAVORRIS WILKINS,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cr-60037-AMC-1

————————————————

Before JORDAN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

After the partial guilty verdict was announced at his October 2019 federal jury trial on drug, gun, and witness-tampering crimes, Christopher Wilkins threw a chair at the lead prosecutor, Assistant United States Attorney John McMillan, and repeatedly threatened to kill him upon release.  For this conduct, Wilkins was indicted on two new charges—assault of a federal officer with a deadly and dangerous weapon, *see* 18 U.S.C. § 111(a)(1) and (b) (Count 1); and threatening to assault and murder a federal law-enforcement officer in retaliation for the performance of official duties, *see* 18 U.S.C. § 115(a)(1)(B) (Count 2)—and found guilty by a jury after a two-day trial.  The district court sentenced him to 80 months' imprisonment, to run consecutively to his prior 210-month sentence.  Wilkins appeals, challenging the district court's jury instructions and verdict form.  After careful review, we affirm Wilkins's convictions.

**I.**

We review *de novo* the legal accuracy of jury instructions and verdict forms but "defer on questions of phrasing absent an abuse of discretion."  *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996).  "District courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts."  *Prather*, 205 F.3d at 1270

(quotation marks omitted). On appeal, "we examine whether the jury instructions and verdict form, considered as a whole, were sufficient so that the jurors understood the issues and were not misled." *United States v. Poirier*, 321 F.3d 1024, 1032 (11th Cir. 2003) (quotation marks omitted). Even if isolated clauses are inaccurate or otherwise subject to criticism, we will not reverse a conviction unless the issues of law were presented inaccurately, or the jury was improperly guided "in such a substantial way as to violate due process." *Prather*, 205 F.3d at 1270 (quotation marks omitted).

Under 18 U.S.C. § 111(a)(1), it is unlawful to "forcibly assault[]" a federal officer "while engaged in or on account of the performance of official duties." We have noted that § 111 "creates three separate crimes." *United States v. Siler*, 734 F.3d 1290, 1295–96 (11th Cir. 2013). First, if the offense involved a "deadly or dangerous weapon," the statutory maximum is twenty years. 18 U.S.C. § 111(b). Second, if the offense involved "physical contact with the victim or the intent to commit another felony," the maximum is eight years. 18 U.S.C. § 111(a). And third, if the offense conduct "constituted only simple assault," the maximum is one year. *Id.*

Section 115(a)(1)(B) makes it unlawful to "threaten[] to assault, kidnap, or murder, . . . a [f]ederal law enforcement officer . . . with intent to impede, intimidate, or interfere with such official . . . while engaged in the performance of official duties," or "with intent to retaliate against such official . . . on account of the performance of official duties." 18 U.S.C. § 115(a)(1)(B). Similar to § 111,

different statutory maximums apply based on the particular offense conduct. *See id.* § 115(b)(1)(B).

## II.

Before trial, the parties jointly submitted proposed jury instructions and a verdict form. As relevant here, the parties' verdict form asked the jury to check either "guilty" or "not guilty" as its finding on the two primary offenses, Counts 1 and 2, as well as two lesser included offenses of Count 1.[1]

At a charge conference before the second day of trial, the district court supplied the parties with its own draft instructions, including a new verdict form. Rather than giving the jury the options of "guilty" or "not guilty," the court's reformulated verdict form asked whether the government proved the primary and lesser included offenses beyond a reasonable doubt and gave the jury the option to select "yes" or "no." What follows is a representative example, regarding the primary Count 1 offense:

> Did the Government prove beyond a reasonable doubt that Defendant Wilkins committed forcible assault against a federal officer with a deadly or dangerous weapon?
>
>             YES ____            NO ____

---

[1] The parties disagreed about whether lesser included offense instructions were appropriate for Count 2. The district court declined to provide such instructions for Count 2. Wilkins does not raise any distinct issue with that ruling or the instructions on Count 2.

Wilkins objected that, "instead of the yes or no, it has to be a guilty or not guilty" since "[t]hat's the traditional nomenclature," and that the verdict from was defective for failing to include "guilty or not guilty anywhere in [it]." Finding nothing "legally incorrect about the manner in which the verdict form is drafted," the district court overruled the objection.

After the close of the evidence, the district court instructed the jury on the law. The jury's role, the court explained, was to "decide whether the Government has proved the specific facts necessary to find the defendant guilty beyond a reasonable doubt." The court instructed the jury that, if the government failed to "prove guilt beyond a reasonable doubt," the jury "must find the defendant not guilty." It also described the reasonable-doubt standard.

Continuing its instructions, the district court explained the nature and elements of Counts 1 and 2, stating that Wilkins could "be found guilty . . . only if" the listed elements of each charged offense were proven "beyond a reasonable doubt." The court also advised that, if the jury found Wilkins "not guilty of the crime charged in Count 1, [it] must determine whether the defendant is guilty of either of the . . . lesser-included offenses," and it listed the elements for those offenses. The court stressed that the jury's role was "to determine from the evidence in this case whether the defendant is guilty or not guilty of those specific crimes," and that its verdict, "guilty or not guilty, must be unanimous." The court also read the verdict from to the jury and informed the jury that there

6                    Opinion of the Court                    22-11115

would be designated spaces to check off "yes" or "no" as its answers
to the form's questions.

Then, in closing arguments, the government likewise
stressed that it was the jury's role to "determine guilty or not
guilty." And it asked the jury to find Wilkins "guilty" of Counts 1
and 2 because, in its view, the evidence proved beyond a reasona-
ble doubt that Wilkins committed the essential elements of those
crimes. In response, defense counsel argued for a "not guilty" ver-
dict on "both counts," arguing that there was reasonable doubt
whether the chair Watkins threw and the threats he made were
targeted at AUSA McMillan, the person identified in the indict-
ment, rather than some other person, like the defense attorney.[2]

The jury later returned a verdict and agreed that it was unan-
imous. The jury answered "yes" to Question 1(a) under Count 1,
"Did the Government prove beyond a reasonable doubt that [Wil-
kins] committed forcible assault against a federal officer with a
deadly or dangerous weapon?," and so skipped Questions 1(b) and
1(c) accordingly. The jury next answered "yes" to Question 2(a)
under Count 2, "Did the Government prove beyond a reasonable
doubt that [Wilkins] threatened a federal law enforcement officer?"
The jury continued to Question 2(b), which stated, "We, the Jury,
having found Defendant guilty of threatening a federal law enforce-
ment officer, further find that Defendant," and listed two addi-
tional options with a corresponding line on which to place a

---

[2] In recorded jail calls, Wilkins admitted he had targeted the prosecutor, whom
he identified by name.

checkmark.  The jury put checkmarks next to both options, finding that Wilkins "[k]nowingly threatened to murder" and "[k]nowingly threatened to assault" AUSA McMillan.  All jurors verified that the verdict was their "true verdict."

The district court determined that the jury "found [Wilkins] guilty," and it adjudicated him guilty on Counts 1 and 2.  Neither party objected.

### III.

Wilkins claims that the verdict form was fatally flawed, resulting in structural error, because it "provided no place for [the] jury to find Defendant guilty or not guilty."  That absence, in his view, means he was convicted and sentenced without being found "guilty" by the jury and without the chance of being found "not guilty," in violation of his due-process and jury-trial rights.  He further claims that the verdict form did not conform to the jury instructions in this regard, repeatedly referring to "guilty" or "not guilty" findings that were absent from the verdict form, thereby confusing the jury and denying him a fair trial.

The Sixth Amendment includes the right of an accused "to a speedy and public trial, by an impartial jury."  U.S. Const. amend. VI.  This right includes, "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'"  *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993).

While the Sixth Amendment ensures that a jury will serve as the "ultimate arbiter[] of [the defendant's] fate," *United States v. Rogers*, 94 F.3d 1519, 1524 (11th Cir. 1996), the Fifth Amendment's Due

Process Clause prescribes "[w]hat the factfinder must determine to return a verdict of guilty," *Sullivan*, 508 U.S. at 277. "The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." *Id.* at 277–78 (citations omitted); *see United States v. Gaudin*, 515 U.S. 506, 510 (1995) ("[C]riminal convictions [must] rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."). Under this framework, a jury's "constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Gaudin*, 515 U.S. at 514.

It follows that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Sullivan*, 508 U.S. at 278; *see Gaudin*, 515 U.S. at 511 ("[A] criminal defendant [has] the right to demand that a jury find him guilty [beyond a reasonable doubt] of all the elements of the crime with which he is charged."). Where the jury receives a constitutionally deficient reasonable-doubt instruction, "there has been no jury verdict within the meaning of the Sixth Amendment." *Sullivan*, 508 U.S. at 280. Such an error is not subject to harmless-error review and is instead categorized as "structural," requiring vacatur of the conviction. *See id.* at 280–81.

## A.

Here, Wilkins has not established structural error. The jury returned a verdict of "guilty" within the meaning of the Fifth and Sixth Amendments, even if it did not use, or have the option of using, that specific term. *See Sullivan*, 508 U.S. at 277–78. The district court instructed the jury on the essential elements of each his charged offenses. It made clear that the jury's role was to determine whether Wilkins was guilty or not guilty of those offenses, and that he could be found guilty only if the government proved the elements beyond a reasonable doubt. The court then asked the jury, on the verdict form, whether the government had proven the respective elements of the offenses beyond a reasonable doubt. And the jury returned its unanimous findings that the elements of Counts 1 and 2 had been so proved. In sum, Wilkins received all that the Fifth and Sixth Amendments require in this context, which is a jury determination whether the government proved beyond a reasonable doubt the facts necessary to establish every element of the charged offenses. *See id.*; *Rogers*, 94 F.3d at 1524 ("[T]he [g]overnment bears the burden of proving beyond a reasonable doubt all elements of the crime charged.").

Wilkins makes no claim on appeal that the instructions were defective with respect to the reasonable-doubt standard or the elements of the charged offenses. He also does not dispute that the questions on the verdict form accurately conveyed those elements. Instead, his essential complaint is that the verdict form asked yes-or-no questions instead of guilty-or-not guilty questions. But there is "nothing talismanic in the terms 'guilty' and 'not guilty.'" *United*

*States v. Spann*, 997 F.2d 1513, 1515 (D.C. Cir. 1993).  And when the jury chose "yes" instead of "no" as its answer on Counts 1 and 2, it did not merely make subsidiary factual findings, but rather applied the law to the facts and expressed its ultimate conclusion of guilt or innocence as to those offenses.  *See Gaudin*, 515 U.S. at 513–14.

For these reasons, we conclude that the jury made the ultimate finding of guilt required by the Fifth and Sixth Amendment, and that the district court properly adjudicated Wilkins guilty based on the jury's verdict.

**B.**

We also reject Wilkins's arguments that "dissonance" between the district court's instructions and the verdict form confused the jury and thus denied him a fair trial.  As we noted above, the district court's instructions made clear that Wilkins could be found guilty only if the government proved the elements of the offenses beyond a reasonable doubt, which the parties disputed in closing, and the verdict form then asked the jury whether the government proved the elements beyond a reasonable doubt.

We presume that the jury acted rationally, *United States v. Ohayon*, 483 F.3d 1281, 1288 (11th Cir. 2007), and that it "follow[ed] the instructions given to it by the district judge," *United States v. Mosquera*, 886 F.3d 1032, 1042 (11th Cir. 2018) (quotation marks omitted).  Based on the court's instructions and the parties' arguments, it would have been clear to a rational jury that "yes" on the verdict form meant "guilty" and that "no" meant "not guilty." Thus, "the jury instructions and verdict form, considered as a

whole, were sufficient so that the jurors understood the issues and were not misled." *Poirier*, 321 F.3d at 1032. Despite the nontraditional phrasing on the verdict form, nothing suggests that the jury was improperly guided "in such a substantial way as to violate due process." *Prather*, 205 F.3d at 1270.

## IV.

In sum, Wilkins has not established a violation of his rights under the Fifth and Sixth Amendments. We affirm his convictions.

**AFFIRMED.**